Colcock, J.
In considering the first- ground taken for a new trial in this case, it would seem to be a work of supererogation to do more than refer to the numerous opinions, of the court as stated in 1 Cons. Rep. 186, where the court have determined that the consignor is liable. -But as the counsel for the respondent has undertaken to controvert that opinion and has adduced authorities which are said to be opposed to it, it may not be amiss to shew that the decision, of this court is supported by the concurrent opinion of all the elementary writers on the subject, and by the very cases which the counsel has relied on.
The first position taken is, that the consignee is liable;, and next, that two cannot be liable.
The first will no.t be denied. The consignee is often liable; perhaps it may be said in nine cases out of ten; but that does not prove that the consignor is not also liable. The second position can not be supported. Indeed the converse of it is true. In commercial transactions nothing is more common and frequent than-that there should be two, three, and, sometimes a dozen persons, all of whom are liable. As in a case of a bill of exchange or note endorsed by different persons. Contracts for freight arise in two ways: First by-charter party; as where a merchant hires a ship for his sole-use, laids her and sends her to a particular port; next by putting the goods on board and taking from the captain a bill of lading, as is the case with those vessels which arc called general vessels; that is such as, carry goods for all and any person who may put them on board. And when the course of trade is well known, the parties acquainted with each other, and the distance to which the goods are t,obe seat *125 Is not great, as in the. case before us, it is not uncommon to place the goods on board, without , any bilí of lading; in which case the contract is to be regulated by the well established law on the subject. By receiving the goods, the shipowner contracts to carry safely and to deliver according to the verbal directions he receives. Now if we resort to just principles, I take it, that no. one is better established than, that he who employs another to perform a service for him is liable to pay him a reasonable compensation for his labor. Why should not the rule apply in this case? It is answered, because the goods are liable for freight and the carrier might have paid himself; and again, because when he delivered the goods to the consignees, he made them his agents. Now the amount of this is, that if a man gives up one of his securities, be abandons them all. There is, to be sure, a strict technical rule of that sort which relates to joint obligors, but this is certainly the first time that it ever was attempted to be applied to cases of this kind. When it is conceded that the goods are liable, and that the consignee may become so by receiving the goods, it does not follow that the consignor would be exempt in cases of loss. For who reposes the confidence in the consignee? Not the carrier, for he is directed to deliver the goods to the consignee and undertakes to do so, For the most part, he is a stranger to him. Now it is a well established rule, that if one of two innocent persons must suffer, he who reposes the confidence and thereby has occasioned the loss, must hear it. In Abbott on Shipping., 241, the author, when .contrasting the opinions of Valin and Fothier, the former of whom contends that the goods alone ought to he liable for the freight, remarks that “ in addition to what Fothier says in answer to this, it may be proper to observe that the argument of Valm seems to prove too much; for if the goods are to he the only security lor the freight, and the merchant ought not to pay the freight, if they are not worfh the amount of it, the master and owners must lose the freight, lif-she goods happen from any accident to come to a bad. mar» *126 ket, which is contrary to all law and reason. And further, that the foundation of the argument does not apply to this country, by the law of which, although the goods are pledged for the freight, yet the merchant also is personally responsible for it.”
But it was contended that-the usage existed in Charleston, whereby the common law liability of the consignor was shifted to the consignee and on this ground the verdict of the jury was no doubt founded.
Before I proceed to examine the testimony, I lay it down as an established doctrine that an usage to affect this purpose must be of long standing, general in its operation, and known to, and acquiesced in, by all whose rights are affected by it, and also just and reasonable in its operation, Upon an attentive examination of the testimony it will be found to be in fact no more than proof of that liability which the law itself imposes on consignees who receive goods. For without exception, all the witnesses state that they deduct the freight out of the consignors produce, and that the carrier often waits until the produce is sold, though they sometimes pay the freight before it is sold. .
As this is a case which has been long depending in our court and has excited some interest, l shall be excused in giving a brief analysis of the evidence.
The first witness, Mr. Simons, says the usage has existed for forty years past, as long as he could recollect, to look to the factor as debtor for the freight. Bat he adds that he knows of no case in which the captain applied to the planter when the factor became insolvent; nor of any case where the planter settled the freight himself. Now hie calling that usage which is law, cannot alter the nature of, the responsibility; and if it could produce any such effect, .does the proof of a liability in the factor remove that of a planter, above all when he says that he knows of no instance in which the matter has been questioned? Does he not negative all idea of usage, though he may express his own opinion?
*127 Mr. Kershaw, the next witness, saysf“when he receiv'- • ed produce for sale, he considered himself liable for freight. He never looked to the planters, and has lost freight. He knows of no caáe of the planters being applied to. He should suppose planters were not liable.” Here again is 1 mere opinion, without any case to support it.
Mr. Minott, the next witness, expresses only his own opinion. He knows of no case, and in .addition to this, has •been only three years a factor.
The next witness, Mr. Gadsden, who was one of thé ■defendants factors, states a very strong opinion on the subject; “ The usage was to look.to the factor. He did-not know an •instance to the contrary. He owned several vessels and always debited the factor and lost freight by factors, but never called on the planter.” Here it is observed also, the ■witness gives only his opinion. He, like Mr. Simons, knows •of no case in which the planter was called ón and refused, or •was sued for'the freight. He did not call on the planter, ■because he believed him not liable; but this is mere opinion and not such evidence as is necessary to establish a point of •such primary importance.
The next witness, Mr. Mazyck, states that' “ he knows nothing of such a custom, though .he has been in business for twenty nine years. He knows instances of the planters paying freight.” This testimony is against the usage.
Mr. White, the next witness says, “ the factor is responsible, except in some cases; never knew an instance of the planters being called on for freight. He thinks that if both factor and planter were charged in the account for freight, both would be liable.” Here is an opinion founded on the mere fact of making the charge against both, which can certainly have no effect; and in another part of his evidence, he says, “ he is not required by the usage of trade to confine his charge against the factor;” which certainly strikes at the usage itself.
*128 The next witness Mr. DeLiesseline, speaks, u of faís¡ Own usage, as he calls it, which is to look to the factor and. not the planter. He has known the captain to complain to the planter that the factor did not pay.’* He then proves no custom.
I remark then in the first place, that all these witnesses are factors. Mr. White disproves the usage; Mr. Mazyck knows nothing of it; Mr. DeLiesseline confines it to himself; Mr. Mynott has been only three years in business. The proof of the usage then rests on the' evidence of Messrs. Simons, Kershaw, and Gadsden; all of whom say, they know of no reasons and give only their opinion. Now if the common law is to be overturned in this way, any eight or ten respectable citizens engaged in the same pursuit, might legist-late for a community. Suppose a dozen merchants in this city should say, that it had been an usage with them, as we all know it has been, to charge goods delivered to an executor or administrator, to the estate which they represent, would this court hold, that therefore, they should be permitted to recover judgment which would bind the estates? Or to take the case put by the plaintiff’s counsel, suppose they should say that a dormant partner was not liable on the note of the principal of the house, would he, therefore, be exempt? To establish an usage, some instances of an acquiescence i@ that usage by those whose rights are affected, are indispensably necessary. Now not a single instance has been given of a carrier agreeing to lose jlis freight by virtue of the usage. Some time ago' the common carriers in London attempted to claim a lien on goods for their general balances and endeavored to establish an usage. But what was the language of the judge in those cases; although they proved several instances, and one as old as thirty years, in which it had been done and acquiesced in? Lord Ellenhorough,said, 11 It is too much to say that there has been a general acquiescence in this claim of the carrier since 1775, merely because there was a particular instance of it at that time; other instan-- *129 ces were only ten or twelve years back, and some of them of very recent date.” Still there were instances. And again, “ It must be admitted that this claim is against the general law of the land, and the proof of it is, therefore, to be regarded with jealousy,” (7 East, 228. Rushford vs. Hadfield.) Í have said that the usage must be just and reasonable, and this, in its general operation. Now this practice is very convenient to the factors, and as to them, it is also just and reasonable, for they receive out of the produce what they pay; and when they speak of having lost freight, it must be understood that they have lost it when acting as agents for ship-owners, or as ship-owners; which is only proof of the operations of their own opinions as to themselves. But can it be considered as just in relation to the carrier? The foundation of the claim to exemption on- the part of the consignor is, that the goods are liable for freight as well as the consignee when he receives them. But when we consider the nature of the business of the carrier and his undertaking, which is to deliver the goods to the consignee, it is perceived he is obliged at last to trust the consignee. Does it comport with the nature of his occupation to be selling out so much of the cargo as will pay the freight, or to lay in port until the consignee can sell? If he were obliged to do so, that which was intended as a benefit, would, in most cases, prove an injury. When it is said, therefore, that these means of payment are offered him no more is meant than that he may under circumstances resort to them. But if they fail, then the original obligation of the consignor attaches, and from him, compensation may be received. If one should contract a debt with the owner of a livery stable for the keeping oí his horse and on riding him out he should die, would it not be unjust that the one should refuse to pay for the keeping of his horse, on the ground that the other had a right to detain him until he was paid, and that he had parted with his lien? I refer now to the cases relied on by the counsel for the respondent. The first is the case of *130 (Davis vs. James,) an action against a common carrier by the consignor, (Burrows 2680,) to which it was objected that having parted with his goods, he could not maintain the action, bat the action should have been brought in the name of the consignee; to which Lord .Nansfield said, “There was neither law nor conscience in the objection. The vesting of the property may differ according to the circumstances of cases; but it does not enter into the present question. This is an action between’the plaintiff and the carrier. The plaintiff was.to pay him; therefore, the action is properly-brought,” &c. Now, this does not prove that the consignor is not liable for the freight; for in this statement of the case, it is said he actually paid the freight. The next was the case of Moore and others vs. Wilson, (1 Term.R. 659.) This was also an action against a common carrier for not carrying the goods safely. The declaration stated that the defendant undertook to carry the goods, “ for a certain hire and reward to be paid by the plaintiffs,” it was proved at the trial, that Clark, the consignee, had agreed with the plaintiffs to pay the carriage of the goods, which the defendant’s counsel contended did not prove the declaration, and Butter, Justice, before whom the cause was tried at Guildhall, being of that opinion, nonsuited the plaintiffs. But on a rule to shew cause why the nonsuit should not be set aside, Butter, said, “ that on considering the question he found that he had been, mi' taken in point of law; for that whatever might be the contract between the vendor and the vendee, the agreement for the carriage was between the carrier and the vendor, the latter of whom was by law liable;” and the other judges concurred. Now this case, so far from impugning the decision of this court, is directly in point to support it. (a.) To these I add tlm only case in which it was ever doubted, as far as my present investigation and research enable me to decide, that *131 the consignor was liable for freight when that was the direct question in the case. It shews not only what the law is in that point, but also that that which is called usage, is established law, The case is that of Pemrose et. al. vs. Milkes, tried before Lord Kenyon in 1790. It was an action for freight on a charterparty,by which the goods were to be delivered in London, agreeably to the bills of lading, to a third person on his paying freight.They were delivered to him and he refused to pay the freight, because the merchant, the defendant, whowasthe consignor was indebted to him to a greater amount. Lord Kenyon held that the freight could not be recovered of the consignee; because the master ought not by the terms of the contract to have delivered the goods without receiving the freight from the consignee. But this opinion of his lordship was overruled in the King’s Bench, and a new trial .ordered, at which the plaintiff succeeded. If a consignee receive goods in pursuance of the usual bill of lading, by which it is expressed that he is to pay freight, he, by such receipt, makes himself debtor for the freight and may be sued for it. (Abbott 277.)
Upon the whole then, no usage havingbeen proved, and the law being well established that the consignor is liable, the motion is granted.
Ford and DeSaussure, for the motion.
Holmes, contra.

 See this same case, heretofore before the court. (1 Const. Rep. 186, 2 Nott and M‘ Cord 9.